J-A01040-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| MICHAEL LAWSON | |
| Appellant | No. 2242 EDA 2021 |

Appeal from the Judgment of Sentence October 20, 2021
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0006142-2017

BEFORE:  LAZARUS, J., MCCAFERY, J., NICHOLS, J.

MEMORANDUM BY LAZARUS, J.:                    **FILED MARCH 14, 2023**

Michael Lawson appeals from the judgment of sentence, entered in the Court of Common Pleas of Philadelphia County, after being convicted by a jury of carrying firearms without a license[1] and carrying firearms on public streets in Philadelphia.[2]  After review, we affirm.

On June 4, 2017, at approximately 4:45 p.m., Anthony Hinton was asleep in the bedroom of his apartment, located at 4710 Locust Street in Philadelphia.  N.T. Jury Trial, 12/3/19, at 31.  While asleep, Hinton was startled by an intruder.  *Id.* at 34-35.  Hinton testified that the intruder held

_____

[1] 18 Pa.C.S.A. § 6106(A)(1).

[2] *Id.* at § 6108.

a gun to his face and demanded that Hinton tell him where he kept his money. *Id.* at 34-36. Hinton stated that he did not know about any money, and the intruder grabbed cigarettes off the bed and left. *Id.* at 34. When the intruder left, Hinton immediately called 911. *Id.* at 40.

Hinton told the 911 operator that someone had broken into his apartment, and that he was the victim of a robbery and assault. *Id.* at 40. When police officers arrived at the apartment, Hinton provided them with a description of the intruder and identified which items were stolen. *Id.* at 41-42. Hinton described his attacker as a black male, with dark skin, average length hair, a beard, weighing between 200 and 250 pounds, and wearing a red shirt and dark pants. *Id.* at 62-63. Hinton stated that the robber wielded a small black handgun. *Id.* at 47. At trial, Hinton testified that he has been near sighted since he was young. *Id.* at 53-54.

Based on Hinton's description, Philadelphia Police Officer Timothy Herrmann, stopped Lawson[3] on a street corner a few minutes later and approximately two blocks from the scene of the robbery. *Id.* at 101-03; *Id.* at 42 (Hinton testifying that Lawson was stopped "no more than a couple of minutes" after Hinton provided officers with a description). The police approached Lawson and asked for identification. *Id.* Lawson informed the

---

[3] Officer Hermann also testified that his partner recorded Lawson's weight as 155 pounds, and that he stood at five feet eleven inches tall and had a slim build. Officer Herrmann also testified that Lawson was bald on the day of his arrest and wearing a red jacket and blue pants.

- 2 -

officers that his identification was in his jacket, which was inside a red Chevrolet Tahoe SUV parked six feet away. *Id.* at 110. Officer Herrmann testified that there were three people sitting in the car—a driver, a front seat passenger, and a driver side rear passenger. *Id.* at 105.

Prior to retrieving the jacket, Officer Herrmann spoke to the driver of the SUV, Karl Riley. *Id.* at 110-11. Riley initially told police that he was not with Lawson but changed his story seconds later and identified the jacket in the backseat as belonging to Lawson. *Id.* at 111-12. There was only one jacket in the SUV. *Id.* at 105.

The jacket, which Lawson claimed as his own, was on the rear passenger-side seat. *Id.* at 103. Officer Herrmann obtained the jacket and immediately felt a heavy object protruding from an inside pocket. *Id.* At this point, he retrieved a silver firearm from the jacket, detained Lawson, and cleared the firearm, which was loaded with five rounds. *Id.* at 103-04. Lawson's identification was not inside of the jacket. *Id.* at 103. From the time Officer Herrmann requested Lawson's identification until he discovered the firearm in the jacket, only 60 to 90 seconds had elapsed. *Id.* Lawson neither had a license to carry a firearm in Pennsylvania nor did he have a sportsman's permit. *Id.* at 10, 12. The parties stipulated at trial that Riley pled guilty to possession of a firearm without a license in November of 2016. *Id.*, 12/4/19, at 35.

On June 4, 2017, Lawson was arrested and charged with robbery—inflicting serious bodily injury (F1),[4] carrying a firearm without a license (F3), carrying a firearm on public streets in Philadelphia (M1), possession of an instrument of crime (M1),[5] simple assault (M2),[6] recklessly endangering another person (M2),[7] and burglary (F1).[8]  On August 1, 2017, the Commonwealth amended the information, removing the robbery charge and adding a threatening serious bodily injury charge.[9]  *Id.*  All other charges remained the same.  *Id.*

On December 5, 2019, after a jury trial, Lawson was found guilty of carrying firearms without a license and carrying firearms on public streets in Philadelphia.  *Id.* at 2.  The charges of simple assault and recklessly endangering another person were *nolle prossed*.  *Id.*  Lawson was found not guilty of the remaining offenses.  *Id.*  On October 20, 2021, the trial court sentenced Lawson to an aggregate of thirty months' probation.  *Id.*

_____

[4] 18 Pa.C.S.A. § 3701(a)(1)(i).

[5] *Id.* at § 907(a).

[6] *Id.* at § 2701(a).

[7] *Id.* at § 2705.

[8] *Id.* at § 3502(a)(1)(i).

[9] *Id.* at § 3701(a)(1)(ii).

Lawson filed a timely notice of appeal, followed by a court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.

Lawson now raises the following claim for our review:

> Whether the evidence was sufficient as a matter of law to sustain Lawson's [Uniform Firearms Act] conviction[s,] 18 Pa.C.S.A. §§ 6106 and 6108, where the evidence did not establish beyond a reasonable doubt that Lawson constructively possessed a firearm found hidden in a jacket [of a vehicle] in which he was a passenger.

Brief for Appellant, at 4 (reworded for clarity).

Our standard of review regarding challenges to the sufficiency of evidence is well-settled:

> [W]hether[,] viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact[,] while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part[,] or none of the evidence.

**Commonwealth v. Orr**, 38 A.3d 868, 872-73 (Pa. Super. 2011) (en banc) (internal citations, quotation marks, and emphasis omitted).

Sections 6106 of Pennsylvania's Uniform Firearms Act provides, in relevant part, as follows:

**§ 6106. Firearms not to be carried without a license.**

**(a) Offense defined.--**

(1) Except as provided in paragraph (2), any person who carries a firearm in any vehicle or any person who carries a firearm concealed on or about his person, except in his place of abode o fixed place of business, without a valid and lawfully issued license under this Chapter commits a felony of the third degree.

18 Pa.C.S.A. § 6106(a)(1). Thus, a person is guilty of a felony in the third degree if he carries a firearm in a vehicle, or concealed on or about his person, without a valid and lawfully issued license. *Id.*

Carrying a firearm on public streets or public property in Philadelphia is defined as follows:

**§ 6108. Carrying firearms on public streets or public property in Philadelphia.**

No person shall carry a firearm, rifle or shotgun at any time upon the public streets or upon any public property in a city of the first class unless:

(1) Such person is licensed to carry a firearm; or

(2) Such person is exempt from licensing under section 6106(b) of this title (relating to firearms not to be carried without a license).

*Id.* at § 6108. Thus, an individual commits an offense under section 6108 if he carries a firearm at any time upon the public streets of Philadelphia without a license. *Id.*

Generally, the Commonwealth must establish Lawson "acted intentionally, knowingly, or recklessly with respect to each element." **Commonwealth v. Johnson**, 192 A.3d 1149, 1155 (Pa. Super. 2018). Because the firearm was not found on Lawson's person, the Commonwealth is required to prove that Lawson constructively possessed the firearm. **See Commonwealth v. Brown**, 48 A.3d 426, 430 (Pa. Super. 2012). Regarding constructive possession, we are guided by the following:

> Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not. We have defined constructive possession as conscious dominion. We subsequently defined conscious dominion as the power to control the contraband and the intent to exercise that control. To aid application, we have held that constructive possession may be established by the totality of the circumstances.

**Id.**

Additionally, a defendant's mere presence at a place where contraband is found is insufficient, standing alone, to prove that he exercised dominion and control over those items. **Commonwealth v. Valette**, 613 A.2d 548, 551 (Pa. 1992); **Commonwealth v. Juliano**, 490 A.2d 891, 894 (Pa. Super. 1985) (location and proximity of an actor to the contraband alone is not conclusive of guilt). Instead, the requisite intent for constructive possession can be demonstrated by showing defendant knows of the existence and location of the contraband. **Id.**, citing **Commonwealth v. Thompson**, 428 A.2d 223, 224 (Pa. Super. 1981).

Lawson argues that the evidence of record in this matter was "insufficient to establish that he constructively possessed the gun hidden [in] the SUV he was standing next to." Brief of Appellant, at 12. Specifically, he highlights that his identification was not found in the jacket, and that Riley lied to the police and had a conviction for the same offense in the past. N.T. Jury Trial, 12/3/19 at 103-04; *Id.*, 12/4/19, at 35. Lawson is afforded no relief.

Instantly, the record shows that Lawson, when stopped by police, was standing approximately six feet away from the red Chevrolet Tahoe SUV. *Id.*, 12/3/19, at 102. Lawson told Officer Herrmann that Lawson's identification was in his jacket, which was in the rear seat of the right passenger side. *Id.* at 103. Additionally, Officer Herrmann testified that, while three other men occupied the vehicle, only one jacket was located inside. *Id.* at 105. Further, the jacket was recovered on the rear passenger-side seat, where Lawson told the officers the jacket was located. *Id.* at 103. The loaded firearm was found in the inner pocket of the jacket. *Id.* at 104.

Moreover, Lawson did not have valid permit to carry a firearm in Pennsylvania. *Id.* at 10. The jury had the benefit of hearing testimony concerning Riley lying to police and Riley's past conviction for carrying a

firearm without a license. However, the jury chose to believe that Lawson, not Riley, possessed the weapon.[10]

Based upon the totality of the circumstances, viewed in the light most favorable to the Commonwealth as the verdict winner, we conclude that the record supports the jury's finding that Lawson constructively possessed the firearm. The facts highlighted above show that Lawson demonstrated knowledge of the location and existence of his jacket, which contained the loaded firearm. From this, it is entirely reasonable to infer that he was also aware of the presence of the firearm, which was found in the jacket. Accordingly, we affirm.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/14/2023

---

[10] While we make no determination as to whether Riley also constructively possessed the firearm, Lawson's arguments here are unpersuasive because it is well-settled law that multiple people may have constructive possession of the same contraband. *See Commonwealth v. Hopkins*, 67 A.3d 817, 820-21 (Pa. Super. 2013).